FILED
2026 Aug-20 PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MODERN WOODMEN OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **7:26-cv-239-EGL** |
| | ) | |
| **TONJA HARRIS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION & ORDER

In 1999, Timothy M. Harris bought a $150,000 life-insurance certificate from Modern Woodmen of America ("MWA") and designated his wife, Robin Lemley, as its principal beneficiary. They divorced in 2003. He married Tonja Harris later that year, moved to Oklahoma, and died there in 2025 without ever changing that designation. Both women claimed the proceeds after his death. MWA interpleaded them, deposited the money with the Clerk, and now asks to be discharged.

Four motions are before the Court: MWA's agreed motion for final judgment in interpleader (Doc. 29); Harris's motion for partial judgment on the pleadings (Doc. 22); Lemley's motion to dismiss Counts II, III, and IV of Harris's crossclaim (Doc. 24); and Lemley's cross-motion for partial judgment on the pleadings (Doc. 26). For the reasons below, the Court **GRANTS** MWA's motion, **GRANTS**

Lemley's motion to dismiss, **DENIES** Harris's motion, and **GRANTS** Lemley's cross-motion.

## BACKGROUND

Timothy Harris purchased renewable term Certificate No. 7533751 while living in Alabama, where he signed the application. Doc. 1 at ¶¶6-7; Doc. 1-1 at 17. He named Robin Lemley, then his wife, as principal beneficiary, and her mother, Joan Carol Lemley, as contingent beneficiary. Doc. 1 at ¶¶7-8, 14. The certificate incorporates MWA's by-laws, which direct payment to the insured's surviving spouse if no designated beneficiary survives him. *Id.* at ¶11; Doc. 1-2.

Timothy and Robin divorced in Alabama on February 9, 2003. Doc. 1 at ¶13. No party identifies any provision of the divorce judgment addressing the certificate, and nothing suggests Timothy ever changed his designations. He married Tonja later that year and remained married to her until his death. *Id.* at ¶¶15, 17, 31. Joan Carol Lemley died in 2022. *Id.* at ¶16. Timothy died on October 1, 2025, then a resident of Oklahoma. *Id.* at ¶17.

Robin claimed the proceeds as the named beneficiary. *Id.* at ¶22; Doc. 1-6 at 2-4. Tonja claimed them as the surviving spouse, arguing that the divorce revoked Robin's designation by operation of law. Doc. 1 at ¶25; Doc. 1-9 at 2. MWA could not tell who was entitled to the proceeds, but indicated that it would pay whoever

the law supported. Doc. 1 at ¶¶23-34, 39. Facing adverse claims to a single fund, MWA filed this interpleader on February 12, 2026. *Id.* at ¶¶36-40.

On March 2, 2026, MWA deposited $151,808.64 with the Clerk, which amounted to the $150,000 death benefit plus accrued interest, pending a decision from this Court. Doc. 6; Doc. 29 at 3; Doc. 29-1. Both defendants waived service and answered. Docs. 9, 14, 15, 21. Neither asserted any claim against MWA.

Harris's answer also asserted crossclaims against Lemley on four counts: a declaration that Harris is the rightful beneficiary (Count I); "Sanctions as a Result of Abuse of Process and Vexatious Litigation" (Count II); "Intentional Interference with a Contractual Relationship and Unjust Enrichment" (Count III); and "Fraud/Misrepresentation" (Count IV). Doc. 21 at 10-13. The same day, Harris moved for partial judgment on the pleadings. Doc. 22. Lemley answered Count I, Doc. 25, moved to dismiss Counts II through IV, Doc. 24, and cross-moved for partial judgment on the pleadings on entitlement to the proceeds, Doc. 26. The motions are fully briefed. Docs. 26-28. On August 11, 2026, MWA moved for a final judgment in interpleader discharging it from the case. Doc. 29. Both claimants agreed to that relief. *Id.* at 3.

## STANDARD

A court may grant judgment on the pleadings when "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."

*Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). Motions requesting judgment on the pleadings are governed by the same standard as Rule 12(b)(6) motions. *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Thus, the Court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Accordingly, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Court must accept well-pleaded factual allegations as true, it need not accept legal conclusions couched as factual allegations. *Id.*

## DISCUSSION

### I. Jurisdiction

MWA pleads two jurisdictional bases: diversity under 28 U.S.C. § 1332 and Rule 22, and statutory interpleader under 28 U.S.C. §§ 1335, 1397, 2361. Doc. 1 at ¶4; Doc. 29 at 4. The Court need not decide whether MWA, a fraternal benefit society, has corporate citizenship under § 1332(c)(1), because § 1335 supplies jurisdiction independently. The contested fund exceeds $500, and the adverse claimants are citizens of different states: Harris is a citizen of Oklahoma, and Lemley

is a citizen of Alabama. Doc. 1 at ¶¶2-3, 37; *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (minimal diversity among claimants suffices). Section 1335 also conditions jurisdiction on the stakeholder depositing the fund or posting bond, and MWA deposited $151,808.64 on March 2, 2026. Doc. 29-1 at 2.

## II. Interpleader Relief & Discharge

Interpleader lets "an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner," avoid multiple liability by asking the court to name the rightful owner. *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). It is available where adverse claims could expose the stakeholder to multiple liability on one fund, *Ohio Nat'l Life Assur. Corp. v. Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009), and where the stakeholder's fear of that exposure is real rather than nominal, *Nat'l Life Ins. Co. v. Alembik-Eisner*, 582 F. Supp. 2d 1362, 1366-67 (N.D. Ga. 2008).

These requirements are satisfied. Two claimants demand the same $150,000, their claims exclude each other, and MWA claims no part of the money. Doc. 1 at ¶¶22, 25, 36-39. Both claimants have consented to MWA's discharge. *See* Doc. 29 at 3. MWA no longer seeks its fees from the fund, and has consented to bear its own costs, *id.* at 8, so the Court need not consider that request. The fund will therefore pass to the prevailing claimant undiminished.

## III. Counts II, III, and IV of Harris's Crossclaim

*Count II.* Harris seeks "sanctions" against Lemley under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power to sanction, because Lemley pressed her claim after "clear and unequivocal warmings [sic] to cease and desist." Doc. 21 at ¶¶17-21.

First, Rule 11 relief requires a separate motion, served twenty-one days before filing, so the target may withdraw the challenged paper. FED. R. CIV. P. 11(c)(2). Harris does not identify which paper is supposed to have been violative of Rule 11 and provides no evidence that she ever served any motion, separate from her pleading, on Lemley before making this request.

Second, § 1927 applies only to attorneys and others admitted to conduct cases, not parties, and it covers only unreasonable and vexatious conduct that multiplies proceedings. *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Harris does not identify any act by Lemley's counsel that was supposed to have been violative of § 1927. In fact, the only conduct she identifies is "Lemley's willful prosecution of an invalid claim" and "Lemley seeking to use this legal process as a means of extracting from a grieving widow the widow's rightful life insurance benefits." Doc. 21 at ¶21. Even so, simply filing a response to a pleading that names one as a defendant is clearly not an act that multiplies proceedings, as it did not

"result[] in proceedings that would not have been conducted otherwise." *Peterson*, 124 F.3d at 1396.

Third, inherent-power sanctions require a finding of bad for or conduct so egregious that it is tantamount to bad faith, such as willful misconduct. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). These powers, "because of their very potency," must be "exercised with restraint and discretion." *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1305 (11th Cir. 2006) (quotation omitted). A party who answers a complaint that names her as a defendant has done only what the federal rules require of her. *See* FED. R. CIV. P. 12(a)(1)(A). The Court therefore declines Harris's invitation to punish that act.

Finally, to the extent Count II alleges abuse of process, such a claim requires wrongful use of judicial process for an end it was not designed to serve. *See C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998). At the time Harris brought this claim, the only items Lemley had filed were two *pro hac vice* motions and her answer to the complaint. *See* Docs. 15, 16, 17. The Court is entirely at a loss to identify a single case under Alabama law in which such actions could amount to abuse of process. In fact, some states have specifically identified "the filing of an answer and counterclaim" as process that is "not … capable of being abused." *See, e.g.*, *PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42-43 (2d Cir.

1988). The Court therefore finds no plausible basis for those acts to amount to an actionable abuse-of-process claim.

Harris argues that she has "plausibly alleged conduct" sufficient to survive dismissal, and that the "issue is not whether sanctions will ultimately be imposed" but "whether Harris may pursue discovery concerning Lemley's continued pursuit of benefits after repeated notice of controlling law." Doc. 27 at 7. That is not the question here; that question is asked and answered in the Court's resolution of the choice-of-law and contractual-interpretation disputes. *See infra* at Part IV. The question here is whether Harris has plausibly alleged sanctionable conduct or conduct that supports a plausible claim for abuse of process. She has not. Indeed, the sanctions accusations are so lacking in factual or legal support that raising them could arguably warrant sanctions.[1]

[1] Sanctions exist to punish seriously wrongful conduct, and to deter future wrongdoing. They should not be invoked to bolster a legal position or to coerce another party abandon their position on the merits of an open legal question. *See Hunter v. Prisbe*, No. 1:12-cv-2013, 2013 WL 1246797, at *2 (M.D. Pa. Mar. 27, 2013) ("[S]anctions cannot be used as a vehicle for pressing parties to surrender honestly held convictions on the merits of litigation."); *cf. Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992) ("[S]anctions, or even the threat of sanctions, should not be used as a means of bullying a weaker opponent."). An accusation of sanctionable conduct is a serious charge, as "[t]he threat of sanctions may deter … almost as potently as the actual application of sanctions." *NAACP v. Button,* 371 U.S. 415, 433 (1963). The Court does not take such accusations of misconduct lightly and looks with great disfavor on charges made without a well-founded factual basis. Counsel for Harris is therefore warned to refrain from making such accusations in the future absent a legitimate reason to do so, as a frivolous request for sanctions is itself sanctionable. *Foy v. First Nat'l Bank of Elkhart*, 868 F.2d 251, 258 (7th Cir. 1989).

*Count III.* An intentional-interference claim lies only against a stranger to a contract or relation. *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). Lemley was no stranger to the certificate. She was named as its principal beneficiary, and the "interference" Harris alleges is simply Lemley's assertion of her rights under it.

Harris's unjust-enrichment theory fails as well.[2] Lemley has received nothing. She thus "[o]bviously … has not been 'unjustly enriched,'" because she "does not have in [her] possession any money belonging to [Harris]." *Hancock-Hazlett Gen. Const. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986).

*Count IV.* Rule 9(b) requires a plaintiff to plead the who, what, when, where, and how of the alleged fraud. *See Norman v. Liberty Mut. Fire Ins. Co.*, 471 F. Supp. 3d 1225, 1241-42 (N.D. Ala. 2020). Harris alleges only that Lemley claimed the proceeds and, "made aware of the law," declined to withdraw her claim. Doc. 21 at 12, ¶29. A litigant's position on a disputed question of law is not a statement of fact, thus "a charge of fraud cannot be predicated on an honest error in a statement of the law." *Johnson v. Sorensen*, 914 So. 2d 830, 839 (Ala. 2005). Harris pleads no misrepresentation of fact, no reliance, and no injury caused by any reliance. In fact,

---

[2] Harris effectively abandoned her "unjust enrichment" claim by failing to defend it. *Cf. Adkins v. Christie*, 491 F. App'x 996, 998 (11th Cir. 2012) (per curiam) (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc). Though she addresses Lemley's "contractual interest" in the certificate, that point is only relevant to her intentional-interference claim. *See* Doc. 27 at 7.

she repeatedly insists that she rejected Lemley's position from the outset of this dispute. The Court therefore cannot identify any factual basis on which Harris's claim of fraud is supposed to rest.

Counts III, III, and IV therefore warrant dismissal with prejudice.

## IV. Entitlement

### *A. Choice of Law*

In interpleader actions, "a federal court applies the choice of law rules of the state in which it is sitting." *Talcott v. Allahabad Bank, Ltd.*, 444 F.2d 451, 461 n.9 (5th Cir. 1971) (citing *Griffin v. McCoach*, 313 U.S. 498, 503 (1941)). For contracts, Alabama follows the principle of lex loci contractus: the law of the state where the contract was made governs, unless the parties choose otherwise or performance lay wholly elsewhere. *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991); *Ex parte Owen*, 437 So. 2d 476, 481 (Ala. 1983). Timothy applied for the certificate in Alabama and his address there when MWA issued it is undisputed by the parties. Doc. 1-1 at 17; Doc. 26 at 6; Doc. 24 at 2. The certificate names no governing law. Alabama law therefore controls who may enforce it.

Harris answers that Timothy died an Oklahoma domiciliary and that Oklahoma's interest in the effect of divorce on a death benefit payable on its resident's death should control. Doc. 27 at 6-7. But Alabama law has not adopted any rule compelling the evaluation of a foreign state's interest in an Alabama

contractual dispute. Harris also cites no Alabama authority measuring a beneficiary's rights by the insured's domicile at death rather than the law governing the policy.

*B. Section 30-4-17*

This case turns on whether Alabama Code § 30-4-17 applied to terminate Robin's designation as the beneficiary of Timothy's life insurance policy. The statute provides, in relevant part, that absent contrary terms in a governing instrument, court order, or marital-settlement contract, "the divorce or annulment of a marriage … revokes any revocable … disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument …." ALA. CODE § 30-4-17(b)(1)(a). But the law did not take effect until September 1, 2015, twelve years before the Harrises' divorce was completed on February 9, 2003. Because § 30-4-17 was not in effect at the time of the divorce, "the divorce" did not "revoke[]" Robin's designation as beneficiary.

Alabama law disfavors giving a statute retroactive application, "absent an express statutory provision or clear legislative intent." *Sumter Cty. Bd. of Educ. v. Univ. of W. Ala.*, 349 So. 3d 1264, 1273 (Ala. 2021). And if Alabama had wanted to include an express provision for retroactive application, it could have done so, like several other States have done in their similar laws governing divorce and revocable designations. *See, e.g.*, NEV. REV. STAT. § 111.781(b)(10) (making the statute

"effective because of the death of a person on or after October 1, 2011, regardless of when the divorce or annulment occurred"); FLA. STAT. § 732.703(9) ("This section applies to all designations made by or on behalf of decedents dying on or after July 1, 2012, regardless of when the designation was made."). But Section 30-4-17 contains no retroactivity clause.

Thus, the Alabama Supreme Court has held that § 30-4-17 "created a prospective default rule, i.e., that a divorce effectively revokes any revocable beneficiary designation in favor of the former spouse, absent further action by the policyholder." *Blalock v. Sutphin*, 275 So. 3d 519, 526 (Ala. 2018). Two words in that holding are key. The rule is "prospective," and it is triggered by "divorce." Harris argues that *Blalock* supports her position because the policy at issue in that case "predated enactment of § 30-4-17." Doc. 22 at 6. But the divorce did not. It occurred after § 30-4-17 took effect. *Blalock*, 275 So. 3d at 521, 524. The statute therefore applied, meaning "the divorce … revoke[d] any revocable … disposition" to the former spouse. ALA. CODE § 30-4-17(b)(1).

But here, the divorce occurred a dozen years before § 30-4-17 took effect, so the divorce did not revoke any interest. *See Miller v. Nationwide Ret. Sols., Inc.*, No. 2:15-cv-1574, 2017 WL 2834109, at *8 (N.D. Ala. June 30, 2017) (holding that § 30-4-17 did not apply because it "was enacted and became effective after the entry

of the divorce decree in this case"). Section 30-4-17 therefore had no effect on the policy at issue in this case.

Harris asserts three remaining arguments. First, she points to the fact that Timothy had ten years after September 1, 2015, to restore Robin's designation and never did. Doc. 27 at 3-4. But such restoration would only be necessary if the designation were revoked, and it never was.

Second, she points to MWA's by-laws, which direct that if no eligible beneficiary survives the insured, payment goes to the beneficiary's surviving spouse. *Id.* at 7. But that default does not apply because Robin survived Timothy, and her designation remains in force.

Finally, Harris makes a policy argument, contending that "Lemley's interpretation would create a permanent grandfather class of pre-2015 former spouses who remain beneficiaries forever unless removed, even where the insured survives enactment for years and never acts to preserve the designation." Doc. 27 at 16. But that is indeed the consequence of any "prospective" law that is trigged by divorce. *See Blalock*, 275 So. 3d at 525. And the Alabama Legislature could have reasonably intended that result. After all, "divorce courts have wide discretion to divide property between spouses when a marriage ends," including "the spouses' life insurance policies, with their beneficiary provisions." *Sveen v. Melin*, 584 U.S. 811, 821 (2018). The Legislature thus could have reasonably concluded that its new

default rule should apply only to new divorces and not to those that were resolved under the old rule.

## CONCLUSION

For these reasons, the Court **ORDERS** as follows:

1. MWA's agreed motion for final judgment in interpleader (Doc. 29) is **GRANTED** as set out below.
2. The Court **FINDS** that it has jurisdiction over this cause and the parties, that adverse claims to the proceeds of Certificate No. 7533751 exposes MWA to a real risk of multiple liability, that MWA has done all that the law requires to perfect its interpleader, and that MWA has acted in good faith by interpleading the proceeds and depositing $151,808.64 with the Clerk on March 2, 2026.
3. Judgment is **ENTERED** for MWA on its Complaint for Interpleader against Tonja Harris and Robin Lemley and all persons claiming through them. MWA has no further liability to any of them under Certificate No. 7533751 or on account of the death of Timothy M. Harris. MWA is **DISCHARGED**, excused from further attendance on this cause, and **DISMISSED WITH PREJUDICE**, bearing its own fees and costs.
4. Tonja Harris and Robin Lemley, and all persons claiming through them, are **PERMANENTLY ENJOINED** under 28 U.S.C. § 2361, from

commencing or prosecuting any proceeding or claim against MWA in any state or federal court or other forum with respect to proceeds payable under Certificate No. 7533751 or on account of the death of Timothy M. Harris. The injunction issues without bond or surety.

5. Lemley's motion to dismiss (Doc. 24) is **GRANTED**. Counts II, III, and IV of Harris's crossclaim are **DISMISSED WITH PREJUDICE**.

6. Harris's motion for partial judgment on the pleadings (Doc. 22) is **DENIED**.

7. Lemley's cross-motion for partial judgment on the pleadings (Doc. 26) is **GRANTED**. The Court **DECLARES** that Robin Lemley's designation as principal beneficiary of Certificate No. 7533751 was not revoked by her divorce from Timothy M. Harris and that she is entitled to the certificate's proceeds. Judgment will be entered against Harris on Count I of her crossclaim.

8. The Clerk is **DIRECTED**, upon entry of final judgment and expiration of the time to appeal or resolution of any appeal, to disburse the funds on deposit in the registry of the Court, $151,808.64, together with any interest accrued thereon and less any statutory registry fee, to Robin Lemley, through her counsel, Michael J. Hoover, at 9015 Bluebonnet Blvd, Baton Rouge, LA 70810.

9. MWA's request for an express finding under Rule 54(b) is **DENIED AS MOOT**. Rule 54(b) governs judgments that dispose of fewer than all claims among the parties. This order resolves every claim of every party, and a single final judgment will follow.

**DONE** and **ORDERED** this 20th day of August, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE